WIEDMAN v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 12, 1901.)

1. RAILROADS—INJURIES AT CROSSING—DIRECTION OF VERDICT.
    Plaintiff was injured at a railroad crossing. Evidence that it was obstructed by trees and brush was disputed by defendant. Plaintiff stopped twice to look and listen. As plaintiff drove on the first track, a freight train on another track moved towards the crossing. He stopped, and was struck by a passenger train on another track, which did not whistle until within 50 feet of where it struck plaintiff's wagon. Held error to direct a verdict for defendant.

2. SAME—DUTY TO LOOK AND LISTEN.
    A person crossing a railroad track is not chargeable with all the possibilities of vision and hearing, but is bound simply to make all reasonable effort to see and hear that a prudent man would make under like circumstances.

Appeal from trial term, Niagara county.

Action by Leonard Wiedman against the Erie Railroad Company. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

S. E. Filkins, for appellant.
Adelbert Moot, for respondent.

HISCOCK, J. This action is brought by plaintiff to recover for personal injuries sustained by him in the village of Tonawanda December 21, 1897, by reason of a collision with one of defendant's passenger trains, and which collision, it is claimed by him, resulted from the negligence of said defendant in the operation of said train, without any concurring or contributing negligence upon his part. At the close of all of the evidence defendant's counsel moved for a direction of a verdict, and this motion was granted; it not appearing whether the same was so granted because of supposed absence of negligence upon the part of the defendant or of the presence of negligence upon the part of the plaintiff.

Beyond any question or necessity of discussion, the jury would have been entitled, among others, to find the following facts: The tracks of the defendant run through the village of Tonawanda in substantially a northerly and southerly direction. Robinson street, where the accident occurred, crosses them substantially in an easterly and westerly direction. Some considerable distance south of the highway crossing is the depot. Commencing from the east,—which is the direction from which plaintiff approached upon the occasion in question,—the first track was that known as the "Lockport Branch," and it was upon this that the accident occurred. Shortly before this track crosses Robinson street from the south, it makes a curve towards the east. The next track was what was known as the "Scales Track," and this was about 25 feet west of the Lockport Branch, from which it divides at a short distance south of the crossing. The next track beyond this was the main track, running through to Niagara Falls; and beyond that was still another track. The plaintiff, who was a joiner and carpenter by trade, had been engaged in connection with his business easterly of defendant's tracks during the afternoon of the day in question. Some time after 5 o'clock he came to Georke's saloon, which was upon the southerly side of Robinson street, and east from the Lockport track between 80 and 90 feet. He stopped there a few minutes, and then about 5:40 or 5:45 started to go home across the tracks in question. He was driving a lumber or democrat wagon with one horse attached. The horse was a gentle one. The plaintiff sat upon a board laid across the box of his wagon, the seat being about four feet from the ground and plaintiff's head about six feet therefrom. He had in his wagon some tools and other things which may have made some noise. As he approached the tracks, his horse was upon a walk. Twice between Georke's and the railroad tracks he listened and looked both ways for a train, the last time being when his horse was within about three feet of the Lockport track. It was dark, or growing dark. As he approached the tracks, he heard an engine somewhere off the crossing letting off steam. As he got upon the Lockport track, a freight train upon the scales track moved down upon or towards the crossing, and he stopped. Just then, looking again towards the south, he saw the passenger train which struck him coming around the curve at a distance of perhaps 120 feet. Its headlight was lit, but it had given no signal of its approach by whistle or bell. When it was within perhaps 50 feet of him, it

gave some sharp blasts of the whistle. He endeavored to get his horse off the Lockport track, and in between that and the scales track, so as to avoid a collision, but was not successful, his wagon being struck, and he being injured. The passenger train was going at the rate of 18 or 20 miles per hour. As stated, there can be no doubt but that a jury would have been entitled to find all of the aforesaid facts. Some of them—notably the alleged failure of the defendant to give signals of the approach of this train and the rate of speed—were disputed. But the issues thus raised were fairly within the province of a determination by the jury.

We come now to the discussion of an alleged obstruction to the view of defendant's train formed by a bank situated in the angle south of Robinson street and east of the Lockport track. The extent of this obstruction is very largely decisive of the question both of defendant's negligence and plaintiff's freedom from negligence, and the defendant insists strenuously that upon all of the evidence it was not of such a nature as to permit the jury to find in favor of the plaintiff upon those questions. This bank (referring especially to the evidence of the plaintiff and one Barralley, a civil engineer, and one of plaintiff's witnesses) west of Georke's saloon and towards the railroad track was between 4 and 5 feet above the level of the roadway of Robinson street, becoming higher as one went westerly towards the railroad track, the highest point being 10 or 15 feet from the track. It extended to within 8 or 9 feet of the track, and then sloped down some. On top of this bank, between the saloon and the track, was an outbuilding 15 by 9 feet, some trees, and a thick growth of brush or weeds from 2 to 4 feet high, which continued about the entire space. The witness Barralley, in answer to the questions of defendant's counsel, expressed the opinion that these trees or bushes would so interfere with seeing down the track towards the direction from which defendant's train was coming as to have prevented plaintiff from seeing the train upon the occasion in question until it got within a very short distance of the crossing. One of plaintiff's witnesses (Gust), who sometimes drove a hose cart, testified upon his cross-examination by defendant's counsel that he could see the top of a train, the smokestack, and headlight upon a train coming as the one did in question when he got by Georke's saloon; that he thought the obstructions in question were about seven feet high, but that upon the seat which he occupied upon the hose cart his head was about eight feet above the ground. Plaintiff swears directly and positively that this bank and obstructions upon the night in question did prevent him from seeing the approaching train; that he looked twice before he got upon the track, and did not see it. There is much other evidence upon this subject, both by plaintiff and by defendant. That upon the part of the latter, both through the oral evidence of witnesses and in the form of photographs and measurements, tends to belittle and minimize the extent of this obstruction. It is claimed, however, upon the part of the plaintiff, that between the time of the accident and the time of the making of the photographs and measurements this bank had been cut down more or less in the

neighborhood of the tracks, and that the photographs do not adequately or fairly represent the extent of the obstructions as they were at the time of the accident. Taking all of the evidence, we think it made a question for the jury whether the plaintiff, in the exercise of that degree of diligence and caution which the law imposed upon him as he approached the track, ought to have seen and known of the approach of this train in time to have avoided it. Even if we should disregard the other evidence given in behalf of plaintiff, and assume that it would have been possible, looking across this bank, to see the smokestack, headlight, and top of a train approaching the crossing, we should not feel inclined to say, as matter of law, that, under all of the circumstances which surrounded plaintiff's approach, he was guilty of contributory negligence for not having so seen said train, and avoided it, or that defendant was free from negligence. It has been held (Henavie v. Railroad Co., 166 N. Y. 280, 59 N. E. 901) that a railroad company which runs a locomotive rapidly in the nighttime upon a public street over a grade crossing without any other signal of its approach than a headlight may be found guilty of negligence, and that a person coming into collision with such train need not, as a matter of law, be held guilty of contributory negligence, even though he saw such headlight. Neither should it be held that plaintiff, especially under the conditions of dusk or darkness prevailing at the time of the accident, was guilty of contributory negligence because he did not see over this obstruction the top of defendant's approaching train, assuming that he could so have seen it. Plaintiff is not to be charged with all of the possibilities of vision and hearing as he approached the track. He was not bound to see or provide against any certain result. He was bound simply to make all of the reasonable effort to see and hear that a careful and prudent man would make under like circumstances. McPeak v. Railroad Co., 85 Hun, 107, 32 N. Y. Supp. 647, and cases cited. But, in our judgment, we are not entitled to assume, in disposing of the questions now before us, that what the witness Gust said he could observe at a height of eight feet from the ground was open or possible to plaintiff as he approached. His head was two feet lower than that, and we have the evidence of one or more witnesses besides plaintiff tending to show that the obstructions in question were more than six feet high, and that, with the plaintiff thus located, it was not possible to see the approaching train until it got near to the crossing. In addition to that, we have the absolute, positive testimony of plaintiff that at least twice, as he approached, he did look towards the direction from which this train came, and was unable to see it until too late to avoid the accident. It has been held in stronger cases for the defendant than this one that such evidence is of great weight in establishing the status of plaintiff and in determining whether a jury shall be allowed to pass upon his conduct. McPeak v. Railroad Co., supra; Seeley v. Railroad Co., 8 App. Div. 402, 40 N. Y. Supp. 866; Stever v. Railroad Co., 7 App. Div. 392, 39 N. Y. Supp. 944.

Especial reference has been made upon the trial to the fact that plaintiff testified that he was unable at first to distinguish whether the approaching train which hit him was upon the Lockport track or upon one of the other tracks, and from this it is asked that the inference be drawn that he negligently subjected himself to the risk and chance of the train being upon another track, and that, therefore, he cannot recover. We do not, however, find any evidence which justifies this conclusion, or which indicates that plaintiff, in reliance upon the train's being upon another track, neglected to do anything to escape from the collision in question. Drawing in behalf of plaintiff (as he is entitled to have us upon this appeal) the most favorable inferences deducible from all of the evidence, and having in mind that all disputed facts are to be treated as established in his favor, we think that he was entitled to have the case submitted to the jury both upon the question of defendant's negligence and his freedom therefrom, and that to refuse him such privilege was an error, for which the judgment and order appealed from must be reversed.

Judgment and order appealed from reversed, and new trial granted, with costs to appellant to abide event. All concur.